DAVID AND MARLENE EISENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eisenberg v. Commissioner
Docket No. 7138-92
United States Tax Court
T.C. Memo 1994-86; 1994 Tax Ct. Memo LEXIS 87; 67 T.C.M. (CCH) 2279; February 28, 1994, Filed *87 Decision will be entered under Rule 155. For petitioners: Walter L. Haines. For respondent: Linette B. Angelastro. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: David and Marlene Eisenberg
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6661
1984
$ 148,595
$ 37,256
$ 7,643
50 percent of
$ 37,149
the interest
due on $ 148,595
1985
119,046
29,879
6,186
50 percent of
29,762
the interest
due on $ 119,046
David Eisenberg
Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)
1986
$ 115,433
$  28,858
$  5,772
-- 1987
372,732
90,683
18,637
-- 1988
478,454
104,614
-- $ 23,923
1989
388,682
83,171
-- -- Additions to Tax
Sec.
Sec.
Year
6653(a)(1)(B)
6654
1986
50 percent of
$  5,585
the interest
due on $ 115,433
1987
50 percent of
19,858
the interest
due on $ 372,732
1988
--
24,891
1989
--
22,225
After concessions, the issue for decision is whether *88 petitioners are liable for the additions to tax under sections 6653(a) and 6661 and the additions to tax under section 6651(a)(1) for 1988 and 1989. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Beverly Hills, California, at the time their petition was filed. Petitioner David Eisenberg (petitioner) received a law degree in 1967, was admitted to the State Bar of California, and practiced law successfully through the years in issue. Prior to 1984, petitioner's practice was a general practice, with emphasis on personal injury. Thereafter, petitioner's practice was limited to specialization in personal injury. Petitioner employed two or three associates and about ten paralegals during the years in issue. During 1987 and 1988, petitioner's law office handled about 500 cases. Petitioner did not maintain any formal books of account for his law office from 1984 through 1989. He *89 did not employ a bookkeeper. He maintained only checkbook records of income and expenses, and he was the only person responsible for or knowledgeable about those records. During the years in issue, petitioner's law practice generated the following income and expenses: Year
Gross Receipts
Expenses
Net Income
1984
$   237,385
$  97,366
$ 140,019
1985
299,935
247,957
51,978
1986
355,348
328,224
27,124
1987
434,059
404,747
29,312
1988
1,403,986
491,129
912,857
1989
1,129,322
574,345
554,977
Petitioner filed Federal income tax returns for 1963 through 1983. Petitioners' joint Federal income tax returns, Forms 1040, for 1984 and 1985 were filed on May 20, 1988. On the 1984 return, petitioner claimed 100 percent of a partnership loss although he was entitled to claim only 57-1/2 percent of the loss; he underreported his interest income by over $ 32,000. Petitioners failed to file Federal income tax returns for 1986, 1987, 1988, and 1989. For each of the years 1984 through 1989, petitioners requested extensions of the time to file to October 15 of the years in which the returns were due. For each year that petitioners filed Federal income tax returns, *90 they engaged the services of Steven R. Dorfman (Dorfman), petitioner Marlene Eisenberg's brother-in-law. Dorfman prepared petitioners' returns for 1984 and 1985 and the requests for extensions of time to file the returns for 1986 through 1989. Petitioner made estimated tax payments during 1988, 1989, and 1990. Petitioners never instructed Dorfman to prepare returns for 1986 through 1989. Petitioner was a partner in a partnership known as Mart, Frank and Eisenberg (MFE). MFE was formed to develop a 6-1/2 acre parcel of land in Santa Cruz, California. Petitioner invested about $ 500,000 in MFE. MFE entered into a contract for a joint venture with a Santa Cruz investment group for development of the Santa Cruz land. The Santa Cruz investment group loaned money to petitioner, secured by petitioner's residence. The joint venture that was planned by MFE and the Santa Cruz investment group was never completed. Litigation between petitioner and the Santa Cruz investment group was commenced and continued from 1984 through 1989. Petitioner spent substantial amounts of time on this litigation. In one lawsuit, petitioner was found liable to the Santa Cruz investment group for $ 680,000. *91 The second lawsuit was settled, with petitioner paying approximately $ 100,000 to the Santa Cruz investment group. Petitioner began experiencing back pain and taking medications for back pain in 1986. In October 1988, petitioner underwent back surgery. Petitioner received relief from that back surgery and returned to work. Petitioner's back pain recurred, and he began to delegate control of some of his cases to an associate, Wendy Rossi (Rossi). Rossi was substituted as attorney of record on some of petitioner's cases. Rossi was also added as a signatory on some of petitioner's business bank accounts. Petitioner continued to suffer severe pain, depression, and impaired judgment. In March 1990, petitioner underwent a second surgery on his back. OPINION Petitioners have the burden of proof as to all issues in this case. Rule 142(a). They have presented neither evidence nor argument that they are not liable for the additions to tax for negligence under section 6653(a) or for the additions to tax for substantial underpayment of taxes under section 6661. Thus, those issues may be decided against them without further discussion. See Rules 123(b), 149(b), 151(e). In any event, *92 the stipulation establishes that petitioners underreported income and claimed erroneous deductions in the returns that they belatedly filed. Petitioner's testimony at trial negated any argument that they relied on the preparer to determine their correct taxable income. Petitioner claimed that the returns could not be prepared without his participation, and he is thus responsible for errors on the returns that were filed. Petitioners failed to maintain adequate records or to file timely returns for any of the years in issue. The additions to tax under sections 6653(a) and 6661 will be sustained. Section 6651(a) provides for an addition to tax for failure to file returns unless that failure was due to reasonable cause and not due to willful neglect. Petitioner contends that his back pain was so debilitating as to constitute reasonable cause for petitioner's failure to file returns for 1988 and 1989. Petitioners' returns for 1984 and 1985 were not filed until May 1988, after the return for 1986 was delinquent and the return for 1987 was due. We have no information concerning Mrs. Eisenberg's efforts, if any, to file returns. Petitioner failed to take any steps to enable others *93 to prepare his returns, which, under the circumstances, he could have and should have done. He did, by contrast, take steps necessary to protect his successful law practice. He also actively conducted litigation over an investment in order to protect his residence. The inescapable conclusion is that petitioner did not believe that his obligation to file a timely Federal income tax return was as important as his income-related activities. We are not persuaded that petitioner's choice of priorities was due to debilitating back pain. Petitioner developed a pattern of failing to file returns prior to the time that his back problems became severe. Petitioners cite only two cases in support of their claim that petitioner's back problems constituted reasonable cause for failure to file returns. In USTC par. 50,314 (E.D. Ky. 1991), the taxpayer became paralyzed and failed to file his 1979 return until February 17, 1983. In USTC par. 9712 (D. Md. 1980), the taxpayer's return for 1972 was filed *94 on some date between July 15, 1973, and August 15, 1973. In neither case is there any indication that the taxpayer continued to engage in income-producing activities or that the pattern of failing to file continued over a period of years, as here. Petitioners engage in the futile task of comparing the severity of petitioner's back pain to the descriptions of illness of other taxpayers in other cases. Petitioners cite no case, however, where the taxpayers' delinquency continued over a period of years while the taxpayers failed to take steps necessary, and readily taken, to cause their tax returns to be filed. Petitioners' failure to do so is unexcused. We conclude that petitioners' failure to file timely returns was due to willful neglect and that the additions to tax under section 6651(a)(1) should be sustained. Decision will be entered under Rule 155.